**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 26, 2021

LETTER TO COUNSEL

      RE:    *Robles v. Saul, Commissioner, Social Security Administration*
              Civil No. 1:19-cv-03271-JMC

Dear Counsel:

      On November 13, 2019, Plaintiff Robles petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income Benefits. (ECF No. 1–2). I have considered the parties' cross-motions for Summary Judgment, Plaintiff's Response and Plaintiff's memorandum of law on supplemental authority.[1] (ECF Nos. 14, 18, 21 & 24). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, deny Defendant's motion, and remand the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Plaintiff filed her claim for benefits on January 24, 2017, alleging an onset date of January 1, 2014. (Tr. 22). Her claim was denied initially on March 23, 2017 and again on reconsideration on June 16, 2017. (Tr. 22). A hearing was held on September 7, 2018, before Administrative Law Judge Michelle Crawford ("ALJ"). (Tr. 45–72). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 22–32). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

      In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do

---

[1] Plaintiff requested, and this Court granted, leave to file supplemental argument on the Fourth Circuit's decision in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). *See* ECF No. 23. Throughout this opinion, Plaintiff's Supplemental Memorandum in Support of Summary Judgment (ECF No. 24) shall be referred to as Plaintiff's "Supplemental Memorandum." The Court permitted Defendant to file a response to the Supplemental Memorandum, (*see* ECF No. 23) but Defendant elected not to do so.

not yield a conclusive determination, the ALJ then assesses the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that during the relevant time frame, Plaintiff suffered from the severe impairments of "fibromyalgia and degenerative disc disease with spondylosis and radiculitis." (Tr. 24). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except that she can never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch and crawl. She can never work near unprotected heights or moving mechanical parts. She is limited to performing simple, routine and repetitive tasks due to the side effects of medications or pain.

(Tr. 25).

The ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. 29). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 30–31). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 31).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

Plaintiff makes several arguments on appeal. (ECF Nos. 14-1 at 3; 24 at 1). Plaintiff contends that: (1) the ALJ erred by failing to consider whether Plaintiff's impairments met Listing 14.09D (inflammatory arthritis); (2) the ALJ failed to give her treating rheumatologist's opinion "controlling weight"; (3) the ALJ failed to properly consider Plaintiff's subjective complaints; and (4) the ALJ's RFC determination is not supported by substantial evidence. *Id.* I agree, and find that the ALJ's opinion is not supported by substantial evidence. Therefore, I will deny both motions and remand the case for further analysis. In remanding for additional explanation, I

express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Specifically, Plaintiff argues that the ALJ "totally disregarded" Dr. Landis' opinion because the ALJ remarked that the opinion was "expressed in vague, conclusory terms and not in vocationally relevant terms," before assigning it partial weight. (ECF No. 24 at 2; *see also* ECF No. 14-1 at 8–9). Plaintiff further asserts that the ALJ failed to properly consider her subjective complaints and that the ALJ's decision "reflects 'a pervasive misunderstanding'" of fibromyalgia. (ECF No. 24 at 2–4) (citation omitted). Finally, Plaintiff contends that the ALJ's RFC determination "is not based on all relevant evidence," and the ALJ failed to perform the function-by-function analysis required by *Mascio*, 780 F.3d 632, and SSR 96-8p. (ECF Nos. 14-1 at 7–12; 24 at 4–5).

The Commissioner counters that the ALJ's decision is supported by substantial evidence. (ECF No. 18-1 at 5). More precisely, the Commissioner asserts that the ALJ properly assigned partial weight to Plaintiff's treating rheumatologist Dr. Landis because the opinion "did not define the frequency or intensity of the [Fybromyalgia related] 'intermittent flares' or the amount of time off they would require." *Id.* at 11. Additionally, the Commissioner contends that the ALJ adequately discussed and considered Plaintiff's subjective complaints of pain and fatigue before concluding that the ALJ's assigned RFC "was supported by Plaintiff's activities of daily living, the medical record, and other evidence of record." *Id.* at 12–14. The Court notes that Defendant's arguments were contained in Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF No. 18-1), which was filed before the Fourth Circuit's decisions in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) and *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377 (4th Cir. 2021). As previously noted, Defendant did not file a response to Plaintiff's Supplemental Memorandum, and therefore has not addressed the impact of *Arakas* and *Dowling* on this case.

## I.     Listing 14.09D

The ALJ's decision concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 25). In this section, the ALJ expressly addresses only Listing 1.04 (disorders of the spine).

The ALJ *did*, in explaining her RFC determination, conclude that Plaintiff "meets the clinical requirements necessary for fibromyalgia as required by SSR 12-2p." (Tr. 28). Fibromyalgia, though, is not a listed impairment; SSR 12-2p therefore instructs an ALJ to consider the impairment under Listing 14.09D.[2] *See* SSR 12-2p (Evaluation of Fibromyalgia), 2012 WL

---

[2] Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.

3104869 ("At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis. . . .). In this Court, Plaintiff argues that she does meet the listing, and points to limitations in her daily activities, social functions, and completion of tasks for support. (ECF No. 14.1 at 5).

Accordingly, given that the ALJ's expressly concluded that Plaintiff satisfied the requirements for Fibromyalgia in SSR 12-2p, yet failed to even mention or consider Listing 14.09D as directed by the same, merits remand.

## II.      Treating Physician Opinion

In reaching her determination, the ALJ was required to consider the medical opinions of Plaintiff's treating physicians. *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in [a claimant's] case record.").[3] Moreover, an ALJ is obligated to weigh the opinions of treating physicians in compliance with 20 C.F.R. § 404.1527(c)(2). *Dowling*, 986 F.3d at 384; *see also Arakas*, 983 F.3d at 107 n.16 (4th Cir. 2020) (noting that under 20 C.F.R. § 404.1527(c)(2), an ALJ must "consider all of the enumerated factors in deciding what weight to give a medical opinion").

In *Dowling*, the Fourth Circuit reiterated the "two rules an ALJ must follow when evaluating a medical opinion from a treating physician" under § 404.1527(c)(2):

> First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

986 F.3d at 384–85 (citations omitted, alterations in original).

---

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09D.

[3] 20 C.F.R. § 404.1520c supersedes 20 C.F.R. § 404.1527 as the regulation governing the evaluation of medical opinion evidence. *See Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). However, Section 404.1527 still applies to Social Security claims filed before March 27, 2017; accordingly, it governs here. *See id.*

Here, the ALJ noted the following with regard to Dr. Landis—Plaintiff's treating rheumatologist:

> In a correspondence dated August 2018,[4] Dr. Landis opined that the claimant's condition causes intermittent flares that will require time off to recuperate (Ex. 19F). The assessment has little probative value, because it is expressed in vague, conclusory terms and not in vocationally relevant terms. The referenced flares are not defined as to frequency, intensity, and time off work needed. As such, this statement is given partial weight.

(Tr. 29). Clearly, the ALJ discounted Dr. Landis' opinion because it was "vague" and "conclusory." *Id.* Such an opinion may correctly be afforded less than controlling weight. However, as *Dowling* instructs, even though an opinion may not be entitled to controlling weight, "it does not follow that the ALJ had free reign to attach whatever weight to that opinion that [the ALJ] deemed fit. The ALJ was required to consider each of the six 20 C.F.R. § 404.1527(c)(2) factors" before discounting Dr. Landis' opinion. *Dowling*, 986 F.3d at 385.

Therefore, the ALJ's failure to consider each of the § 404.1527(c)(2) factors constitutes error. "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that [the ALJ] meaningfully considered each of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385 (citing *Arakas*, 983 F.3d at 107 n.16).

Here, the ALJ's discussion of Dr. Landis' opinion may fairly be read as addressing one of the aforementioned factors—supportability (or the lack thereof). Specifically, the ALJ noted that "because [the opinion] is expressed in vague, conclusory terms [as opposed to] vocationally relevant terms, [and because t]he referenced flares are not defined as to frequency, intensity, and time off work needed . . . , this statement is given partial weight." (Tr. 29). However, the ALJ "never so much as acknowledged the existence of the Section 404.1527(c) factors," and the decision was "completely silent" as to the remaining five factors. *Id.* Accordingly, remand is warranted under *Dowling*, so that the ALJ can consider each of the enumerated factors in 20 C.F.R. § 404.1527(c)(2) before assigning less than controlling weight to the medical opinion of a treating physician.

### III. Subjective Complaints

An ALJ must evaluate a claimant's subjective complaints under the two-step framework set out in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029. *Arakas*, 983 F.3d at 95 (4th

---

[4] In pertinent part, Dr. Landis' correspondence provided as follows:

> [Plaintiff] is a current patient of my practice since 06/02/2016 where I have been treating her for Fibromyalgia. [Plaintiff] has a chronic lifelong condition with constant joint pain, cognitive problems and fatigue which can worsen with [s]tress, environment and medication. [Plaintiff's] condition will cause intermittent flares that will require time off to recuperate. [Plaintiff] is required to follow up with my office as needed or sooner for flares.

(Tr. 764).

Cir. 2020). "First, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Second, "the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4).

To guide the step two evaluation, 20 C.F.R. § 404.1529(c) provides a structure by which the SSA considers "objective medical evidence" and "other evidence." While the former "is a useful indicator to assist . . . in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work," the SSA will not reject statements about intensity, persistence and effects "solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Of particular import in this case, 20 C.F.R. § 404.1529 provides a list of factors the SSA "will consider" when reviewing "other evidence," including:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

The Court finds that the ALJ erred when she discounted Plaintiff's subjective complaints. For the first prong of the test, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 26). However, the ALJ's analysis went astray as it pertains to the second prong, where the ALJ discounted Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of Plaintiff's symptoms because such statements were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* In doing so, the ALJ "improperly increased [Plaintiff's] burden of proof" by effectively requiring [Plaintiff's] subjective descriptions of [her] symptoms to be supported by objective medical evidence." *Arakas*, 983 F.3d at 96.

At the outset of ALJ's explanation of her RFC determination, the ALJ noted that she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 25). The ALJ summarized Plaintiff's symptoms and their associated effects, as described in the hearing testimony: Plaintiff "alleges an inability to work due to widespread body pain, lower extremity

swelling and fatigue. [Plaintiff] indicates that these symptoms cause restrictions in activities of daily living and limit her ability to sit, walk and stand for prolonged periods." (Tr. 26). The ALJ's explanation that follows focuses exclusively on objective medical evidence and medical opinion evidence to the derogation of Plaintiff's statements. (Tr. 25–29). Most problematic, in light of the Fourth Circuit's decision in *Arakas*, is the ALJ's treatment of Plaintiff's Fibromyalgia diagnosis. (Tr. 28).

*Arakas* reaffirmed that, in the second step of the evaluation of Plaintiff's subjective complaints, Plaintiff "was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or severe that [they] prevent[ed] [her] from working a full eight hour day," and that the ALJ "'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." 983 F.3d at 96 (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (alterations in original)). The *Arakas* Court further explained how legal error of this sort "is particularly pronounced in a case involving fibromyalgia—a disease whose 'symptoms are entirely subjective,' with the exception of trigger-point evidence." 983 F.3d at 96 (quoting *Sarchet*, 78 F.3d 305, 306 (7th Cir. 1996)). A physical examination of a patient with Fibromyalgia "will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Arakas*, 983 F.3d at 96 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108–09 (2d Cir. 2003)).

To begin, the ALJ's explanation is devoid of Plaintiff's statements about her symptoms and related effects on her ability to work an eight-hour day from the hearing testimony. (Tr. 25–29). For example, Plaintiff testified that, on a scale of 0 to 10, she experienced pain of 9 or 10 for four days a week, and that she is limited in how long she can sit and walk. (Tr. 58–59). What is worse, from the Court's view, is that, "while objective medical evidence is unnecessary at the second step of the symptom-evaluation framework, such objective evidence *was present* in this case." *Arakas*, 983 F.3d at 96 (emphasis in original). Both Dr. Landis and Dr. Charles Simmons, Plaintiff's treating pain management physician, made numerous trigger-point findings.[5] Dr. Simmons documented "mild forearm, mild bicep, thigh and calf tender points and widespread tenderness along the spine and joints," initially in 2016 and through 2018; Dr. Landis the same tender points and widespread tenderness in 2017. (Tr. 27–28). In total, Dr. Simmons identified more than 11 positive tender points bilaterally on physical examination—just as SSR 12-2p requires—"low cervical spine, trapezius muscle, supraspinatus muscle, lateral epicondyle, gluteal muscles, and greater trochanter muscles." (Tr. 27–28). However, the ALJ's decision reflects "a pervasive misunderstanding of the disease," because it credits a "normal" EMG showing "no evidence of peripheral nerve entrapment, peripheral neuropathy, cervical and lumbar radiculopathy, brachial and lumbar plexopathy or myopathy," to discount the only objective evidence of Plaintiff's limitations. (Tr. 28). Additionally, the ALJ's decision is flawed in that it fails to meaningfully discuss the 20 C.F.R. § 404.1529(c)(3) factors to assess Plaintiff's subjective statements. Instead, in conclusion, the ALJ baldly asserts that the RFC "is supported by the claimant's activities of daily living." (Tr. 29).

---

[5] A "trigger-point" is "tenderness in specific sites on the body," which "courts have recognized as 'objective medical evidence of fibromyalgia.'" *Arakas*, 983 F.3d at 97 (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003)).

As a final note, the ALJ concluded that the medical evidence and other evidence of record, "suggest that the claimant can sustain a greater capacity than she described at the hearing." (Tr. 29). However, her analysis makes no prior mention of the hearing testimony. On this point, the Court believes the ALJ's decision runs afoul of *Mascio v. Colvin*,[6] because the RFC lacks the necessary narrative discussion citing specific evidence to support this conclusion. 780 F.3d at 636. At the very least, the ALJ's off handed comment failed to "build an accurate and logical bridge from the evidence to [her] conclusion" that Plaintiff's hearing testimony was not credible. On remand, perhaps the ALJ can clarify the basis of her decision to exclude Plaintiff's representations regarding her capabilities.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 14), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED. The Commissioner's judgment is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

---

[6] Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. The regulations further provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.2d 176, 189 (4th Cir. 2016) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (1996)). Specifically, an ALJ's "RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions." *Bowers v. Commissioner*, Civ. No. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) (quoting *Taylor v. Astrue*, Civ. No. BPG-11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012)); *see also White v. Commissioner*, Civ. No. SAG-16-2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (internal citation and quotations omitted). In the narrative discussion, the ALJ must "build an accurate and logical bridge from the evidence to [his or her] conclusion." *Bowers*, 2013 WL 150023, at *2 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).